AO 91 (Rev. 11/11) Criminal Complaint | AUSA: Ranya Elzein | Telephone: (313) 226-0213
Special Agent: Christopher Smilo, ATF | Telephone: (313) 202-3400

# UNITED STATES DISTRICT COURT
for the
Eastern District of Michigan

United States of America
   v.
D-1 Dejuan Walker

D-2 Jamir Morris
    aka: James Clark
        Jaquan Morres
        Jaquan Morris

Case No.
Case: 2:24−mj−30229
Assigned To : Unassigned
Assign. Date : 6/13/2024
Description: COMP USA V.
WALKER, ET. AL (KB)

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __June 11, 2024__ in the county of __Wayne__ in the __Eastern__ District of __Michigan__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| D-1 Dejuan Walker<br>D-2 Jamir Morris<br>18 U.S.C. § 922(g)(1) | Felon in Possession of a Firearm |
| D-2 Jamir Morris<br>18 U.S.C. § 922(o) | Illegal Possession of a Machinegun |

This criminal complaint is based on these facts:
See attached affidavit.

☑ Continued on the attached sheet.

_____
Complainant's signature

Christopher Smilo, Special Agent, ATF
*Printed name and title*

Sworn to before me and signed in my presence
and/or by reliable electronic means.

_____
Judge's signature

Date: __June 13, 2024__

City and state: __Detroit, MI__     Hon. R. Steven Whalen, United States Magistrate Judge
*Printed name and title*

# AFFIDAVIT

I, Christopher Smilo, being duly sworn, depose and state the following:

## I.      INTRODUCTION

1.      I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), and have been since December 5, 2021. I am an "investigative or law enforcement officer of the United States" within the meaning of Title 18, United States Code, Section 2510(7), and I am empowered to conduct investigations and make arrests of offenses enumerated under federal law.

2.      I have received extensive training from the Criminal Investigator Training Program and the ATF Special Agent Basic Training Program at the Federal Law Enforcement Training Center in Glynco, Georgia. In addition, I have attended additional training on Machine Gun Conversion Devices (MCD) which are commonly referred to as "Glock switches". I received a bachelor's degree in criminal justice from Wayne State University and was employed by the United States Border Patrol for twelve years, the last ten years of which I served on a full-time Special Operations team. I have made many arrests and executed numerous search and arrest warrants that resulted in the seizure of large amounts of illegal narcotics and firearms, and the arrests of transnational illegal aliens and human traffickers.

3.     I make this affidavit from personal knowledge based on my participation in this investigation, including interviews conducted by myself and/or other law enforcement agents, communications with others who have personal knowledge of the events and circumstances described herein, review of reports by myself and/or other law enforcement agents, and information gained through my training and experience. The information outlined below is provided for the limited purpose of establishing probable cause and does not contain all the information known to law enforcement related to this investigation.

4.     The ATF is currently conducting a criminal investigation concerning Dejuan WALKER, for violations of 18 U.S.C. § 922(g)(1) (Felon in Possession of a Firearm); and Jamir MORRIS (a.k.a James Clark, Jaquan Morres, and Jaquan Morris) for violations of 18 U.S.C. § 922(g)(1) (Felon in Possession of a Firearm) and 18 U.S.C. § 922(o) (Illegal Possession of a Machinegun).

## II.    PROBABLE CAUSE

5.     I reviewed records related to WALKER's criminal history and learned the following:

    a.     On July 13, 2017, WALKER was charged with multiple counts of assault with intent to murder, felonious assault, and felony firearm. On October 30, 2017, WALKER pleaded guilty to one count of felonious assault and one count of felony firearm in the

    Third Judicial Circuit Court, Wayne County, Michigan. On or about November 13, 2017, WALKER was sentenced to two years of incarceration, followed by three years of probation;

b. While on probation, on or about July 29, 2019, WALKER was arrested and charged with receiving and concealing a stolen motor vehicle, stealing or retaining a stolen financial transaction device, and assaulting and resisting police. On November 26, 2019, WALKER pleaded guilty to one count of felony assaulting and resisting police in the Third Judicial Circuit Court, Wayne County, Michigan. On or about February 22, 2023, WALKER was sentenced to two years of probation;

c. While on bond pending sentence, on or about December 30, 2019, WALKER was arrested and charged in two separate cases (20-000503-01-FH and 20-000554-01-FH) with a total of three counts of carjacking, eight counts of armed robbery, two counts of felon in possession of a firearm, and nineteen counts of felony firearm. On January 24, 2023, WALKER pleaded guilty to one count of carjacking in the Third Judicial Circuit Court, Wayne County, Michigan. On February 22, 2023, he was sentenced to 4–20 years' incarceration with the Michigan Department of

Corrections.

d. On or about September 6, 2022, WALKER was charged with assault of a prison employee. On January 31, 2023, WALKER pleaded guilty as charged. On February 22, 2023, he was sentenced to 1–5 years' incarceration with the Michigan Department of Corrections. WALKER was released from custody on April 2, 2024 and is currently supervised on parole.

6. Based on my training and experience, defendants are warned of the maximum penalty when they enter a plea of guilty to a felony. Additionally, defendants are advised that they are pleading guilty to a felony. Based on the number of WALKER's convictions, the time he has spent incarcerated or under supervision as a result of those convictions, and the fact that WALKER has previously been charged with the offense of felon in possession of a firearm, there is probable cause to believe that WALKER is aware of his status as a convicted felon.

7. I reviewed records related to MORRIS's criminal history and learned the following:

e. On March 24, 2017, MORRIS was arrested and charged with carrying a concealed weapon. On April 20, 2017, MORRIS pleaded as charged in the Sixth Judicial Circuit Court, Oakland County, Michigan. On or about May 11, 2017, MORRIS was

4

      sentenced to three years of HYTA probation. MORRIS violated probation and his HYTA status was revoked on June 14, 2018. MORRIS was resentenced to one year in the Oakland County Jail;

f. While on probation, on or about June 1, 2017, MORRIS was arrested and charged with carrying a concealed weapon. On June 12, 2017, MORRIS pleaded guilty as charged in the Third Judicial Circuit Court, Wayne County, Michigan. On or about February 28, 2018, MORRIS was sentenced to four months' incarceration with the Wayne County Jail, followed by two years of probation;

g. While on probation, on or about February 14, 2019, MORRIS was arrested and charged with receiving and concealing a stolen motor vehicle, possession of narcotics, and failure to stop at the scene of an accident. On March 27, 2019, MORRIS pleaded guilty to one count of receiving and concealing a stolen motor vehicle and one count of failure to stop at the scene of an accident in the Third Judicial Circuit Court, Wayne County, Michigan. On April 22, 2019, he was sentenced to 6 months' incarceration followed by two years of probation; and

  h.  While on probation, on or about December 30, 2019, MORRIS was arrested and charged in two separate cases (20-000503-01-FH and 20-000554-01-FH) with a total of three counts of carjacking, eight counts of armed robbery, two counts of felon in possession of a firearm, and nineteen counts of felony firearm. On January 24, 2023, MORRIS pleaded guilty to one count of carjacking in the Third Judicial Circuit Court, Wayne County. On February 21, 2023, he was sentenced to 4–20 years' incarceration with the Michigan Department of Corrections. MORRIS was released from custody on February 8, 2024 and is currently supervised on parole.

8. Based on the number of MORRIS's convictions, and the time he has spent incarcerated or under supervision as a result of those convictions, there is probable cause to believe that MORRIS is aware of his status as a convicted felon.

## II. PROBABLE CAUSE

9. On June 11, 2024, at approximately 10:54 p.m., three Detroit Police Department (DPD) officers went to a gas station on Harper Avenue in Detroit, Michigan after receiving information that a man wearing a gray hooded sweatshirt inside the gas station was carrying what looked to be a firearm concealed in his sweatshirt pocket. The man—later identified as WALKER—was captured on the

6

store's Greenlight security camera carrying what appeared to be a handgun in his front pocket.



10. Officers went into the gas station looking for WALKER. But when an first officer walked inside, she met MORRIS standing at the counter. The officer immediately observed MORRIS to have the imprint of a firearm in his front waistband, inside his pants. The officer asked MORRIS if he had a concealed pistol's license (CPL), and he replied he did not. The officer placed MORRIS into handcuffs and attempted to take him into custody.

11. While the first officer dealt with MORRIS, her two partners turned their attention to WALKER. The officers walked over to WALKER—who had distanced himself from MORRIS and was keeping his hands in his hoodie pocket—and asked if he had a CPL. WALKER tried to walk past the officers and told them

had a CPL in his car. The officers told WALKER to back up and take his hands out of his pocket. WALKER disregarded the officer's commands and pulled away from the officers as he continued to try to walk out of the store. An officer tried to handcuff WALKER, and WALKER resisted, pulling away from the officer.

12. At the same time, MORRIS—still handcuffed—pulled away from the female officer and attempted to flee. The female officer clung to MORRIS to prevent his escape. As he dragged her out of the gas station, the female officer called in for back-up. MORRIS tried to wrestle away from the officer, but he was slowed down when his pants began to slide down his thighs. Near the air pump outside the gas station, the waistband of MORRIS's pants shimmied to his knees, and a handgun fell from his waistband. After a few more steps, MORRIS fell to the ground. Officers were able to take MORRIS into custody.

13. Officers recovered a loaded black Glock G19 GEN3 9mm handgun from the ground near the air pump. The Glock firearm was equipped with a machinegun conversion device (MCD), which is commonly referred to as a "switch". The MCD or "switch" is a conversion device that is designed to convert a semi-automatic firearm, which a Glock G19 is manufactured as, to a fully automatic firearm, which is capable of expelling multiple rounds from a single trigger pull. Since the sole purpose of a MCD or "switch" is to make a firearm fully automatic, the MCD or "switch" itself is classified as a machinegun under federal law.

14. WALKER continued to struggle with two officers inside the gas station. As one officer attempted to handcuff WALKER, a second officer reached into WALKER's hoodie pocket and recovered a loaded black Beretta APX handgun. The officers continued to struggle with WALKER, who used his body weight to pull away from the officers and push past them. Outside the gas station, the struggle to take WALKER into custody continued. WALKER bit both officers. WALKER broke the skin of one of the officers, causing him to bleed.

15. During the struggle, WALKER attempted to remove a department-issued taser from one of the officer's vests. The officer regained control of his taser, but WALKER got up and began to run away. An officer used his department-issued taser on WALKER, which momentarily immobilized him. The officers attempted to handcuff WALKER, but WALKER stood up and pulled away from the officers, again. Back-up officers arrived and were able to catch up to WALKER and take him into custody.

16. On June 13, 2024, I contacted ATF Interstate Nexus Expert, Special Agent Kevin Rambus, and provided information about both the Beretta APX handgun and the Glock G19 GEN3 9mm handgun. SA Rambus concluded that both firearms were manufactured outside the State of Michigan, and both are firearms as defined in Title 18 U.S.C., Chapter 44, Section 921(a)(3).

### III. CONCLUSION

17. Probable cause exists to believe that on June 11, 2024, Dejuan WALKER knowingly possessed a firearm after having been convicted of a felony offense in violation of Title 18 U.S.C. Section 922(g)(1). This violation occurred within the Eastern District of Michigan.

18. Probable cause also exists to believe that on June 11, 2024, Jamir MORRIS knowingly possessed a firearm equipped with a machinegun conversion device after having been convicted of a felony offense in violation of Title 18 U.S.C. Section 922(g)(1) and Title 18 U.S.C. 922(o). These violations occurred within the Eastern District of Michigan.

Respectfully submitted,

Christopher Smilo, Special Agent
Bureau of Alcohol, Tobacco, Firearms
and Explosives

Sworn to before me and signed in my
presence and/or by reliable electronic means.

Honorable R. Steven Whalen
United States Magistrate Judge

Dated: June 13, 2024

10